Mr. Murphy, I think you're up. Yes, I thank you, Your Honor. If it may please the court, I am Theodore Murphy representing the petitioner Yurvin Morales-Lopez. I've reserved two minutes for rebuttal. At issue in this case is the failure of the government to issue a notice to appear, which is the case initiating document for immigration removal cases, with the statutory required information and whether proceedings should be terminated. These issues were raised with the Board of Immigration Appeals. Although at the time that the issue, the case was raised on appeal in May of 2018, the issues was raised in the context of a statutory violation and jurisdiction. Since that time, Pereira- Was it raised before the IJ? It was not raised before the IJ, Your Honor. I mean, had it been raised before the IJ, I suppose the IJ could have said issue a new NTA and put in the dates, and that would have solved the problem, right? At the time that the case was conducted, the individual hearing in May of 2018, Pereira had not yet come out, and it was not an issue in most of the immigration courts at that time. We believe that it was raised timely when the case was on appeal. Well, the problem is it's a procedural type of rule that clearly the Supreme Court has indicated that the notice to appear must contain the dates. It's a defect there, but it's a defect that would have been easily curable by issuing a new notice to appear. And because it was easy curable, it seems to me when it's not raised, then there you raise it on appeal after you've lost, whether there's a forfeiture of the position. And so, especially in view of the fact that two days after you got the notice to appear, you got a hearing date notice. I know that doesn't amend the notice to appear, whether the Supreme Court cases are clear on that, of course, but it does highlight the notion that the procedural rule could have avoided the problem, a procedural objection could have avoided the problem altogether. And by not allowing the IJ to correct the situation and bringing it up on the appeal seems to me to be just why we have such a doctrine that you raise it or you forfeit it. Understood, Your Honor. With respect to raising the issue before the agency, the Board of Immigration Appeals in two cases has looked at essentially timeliness. Rosales Vargas is one issue, one case that came out, I don't have the date right in front of me, but came out subsequent to this case being on appeal. In that case, with respect to timeliness of raising the objections in Rosales Vargas, there had been a period of five years between the time the notice to appear was issued and the date of the individual hearing. In Rosales Vargas, the precedent decision from the Board of Immigration Appeals, they viewed that as a timely raising of the issue on the day of the individual hearing. In another case, which just- Well, I don't think the issue that I raised with you is a timeliness issue. The issue is when you raise it. In other words, the notion is if the proceedings last five years and it could still be corrected, sure, it would be fine to raise it. But if you haven't raised it, there's been a final decision and you lose the decision and then on appeal, you raise it for the first time before the BIA, it's a little bit of a gotcha. That's why the forfeiture doctrine would be in there. And I think in this case, where you did get the hearing date very promptly and there was a defect, but the question is whether the defect was basically harmless in this case. I understand. I believe I understand the question, Your Honor. The Fourth Circuit Court of Appeals in Wheatley versus Wicomico County, a case from 2004, held that when there are exceptional circumstances present, for example, novel, important, recurring questions of federal law, intervening changes in the law and extraordinary situations with potential for miscarriage of justice, that it is permissible to raise the issues when they're on appeal. I believe we have that situation here. We have had since after the case was decided by the immigration judge, the U.S. Supreme Court decision in Pereira is essentially a change in the law. Subsequent to that and after this case was briefed before the... But that Pereira had to do with a stop time provision and I don't think that we have a stop time provision at issue in this case. We do not, but also at issue was the violation of the statute in Pereira, Your Honor, and how the stop time rule for cancellation of removal could not be triggered if there was a defective notice to appear under Section 12. The Supreme Court has not wanted to characterize everything as jurisdictional we see that in statutes of limitation and everything. And I was under the impression that there were a number of, a great many decisions, including our own, that regarded this as a regulatory matter. And if it's a regulatory matter, then it would seem to be, the regulations would seem to me to make it not a jurisdictional matter, but a docketing matter. And this is simply a docketing question under the regulations. And there are a number of cases that indicate that, because you could say that a minor defect that was corrected, and this was later corrected, somehow deprived the Board of Jurisdiction. That prevents you from ever getting into the merits of whether someone deserves to be removed or whether someone doesn't deserve to be removed. But the point is not to have some clerical error, which was later corrected, prevent the IJ and BIA from getting to the substance of the matter, which is what Congress would want us to do. I have no idea whether this individual is removable or whether he or she is not. I don't know. But there's something to be adhered to for getting to the substance of the issue. And not just terminating the removal proceedings. Particularly where there's a later valid order that was the issue, stating the time and the place of the hearing and the petitioner received notice to appear at a certain time and place. The petitioner attended the removal proceedings. The petitioner secured counsel. The petitioner challenged the IJ's adverse credibility determination. All well and good. That's the way things are supposed to go. So, why would we just sort of terminate the whole removal proceedings when, as far as I can see, the petitioner received notice of them and participated with counsel? Understood, Your Honor. This raises a couple of different issues. The Supreme Court in Nishevez v. Garland, a decision that came out at the end of April last year in 2021, addresses the issue that was raised, well, further clarifies the issue that was raised in Carrera. And they focus on the statute as a whole. Specifically, the language is in 1229. And they find that the statute is clear. That there is no opportunity to cure a defective notice to appear. You cannot cure it by a subsequent notice of hearing. It's defective. That case... Mr. Murphy, I absolutely agree with you. And trust me, I'm going to have some questions with the government for why they can't seem to get this right. But can I ask you a question that relates to that? I guess this is a specific question about the facts of this case. What, if any, prejudice do you claim that your client suffered from what I will posit is a violation of the statute? For purposes of my question, I'm positing that this statute was your client suffer as a result. Well, my client would be eligible for voluntary departure at the conclusion of proceedings. A case that just came out 10 weeks ago from the Board of Immigration Appeals called MFO re-looked at the statute for voluntary departure after the Nish Chavez case came out for the Supreme Court in April of 2021. It looked at the language of... ...stop time rule and looked at the separate statute for conclusion voluntary departure that also has a stop time rule. And they found that the reference to section 1229A was critical. So in MFO... But in those cases, the stop time rule was critical and there is prejudice because the stop time rule was started... time was started when it should not have been started. But here, the question is basically the notice to appear is supposed to contain the time and date of the hearing and place of the hearing. And that was left blank. And that clearly is a violation under Chavez and Pereira. No question about it. But as we said in Cortez, the notice to appear is not jurisdictional and it's not a docketing rule. It's similar to, I would say, a defective complaint filed in a civil action. If the complaint is defective, you can raise an issue about the defect and the person can correct the defect. But... And this was a defective complaint. I think I'd go further than Judge Heitens. I'd say it seems to me it pretty clearly violates the Chavez opinion where it says you have to include the time and date in the notice to appear and not over a period of documents. But as I understand the facts in this case, within a few days, the petitioner here, Lopez, received the time and date of the hearing and he attended. And he attended with counsel and he was prepared and he made his case. So the whole purpose for including the time and date, it was a violation, but the whole purpose was fulfilled very shortly thereafter without, I gather, any prejudice. But that's what I think the question is, is the fact that it was included in the notice of the hearing as opposed to the notice to appear. How is he prejudiced in this case? With respect to prejudice in this case, my client was detained. The first three hearings that he had in Phoenix, Arizona, in January 2016, February 2016, and March of 2016, he was unrepresented and detained. So he was brought to court. The purpose of the notice to appear is to provide notice that you need to appear at a particular date and a particular time. Yes, he was actually taken to court. He was detained at those times. I thought he received a notice to appear. When did he receive the notice of the hearing in respect to the notice to appear? According to the notice to appear, which is in the certified record, that was, I believe, it's dated November 29th, 2015, the same date. That's on page 492 of the administrative record. That was provided to him the same date. What's interesting, Your Honor, the certificate of service. No, my question is, when did he get the notice of the hearing, which gave him the time and place of the hearing, in respect to the notice to appear? Your Honor, I do not know from the record if the notice of hearing was actually given to him or if he was brought to the hearing by the court. I cannot tell from the record. On December 31, 2015, they served him with a copy of the notice of hearing. Yes, on page 492. He wasn't arrested. He was served with a copy and told to appear on January 13th. Understood, Your Honor. Yes, from the record that he did get it that day. Okay. Why isn't this a matter of circuit precedent as well? In addition, I can't, you know, it seems like on the prejudice point, no harm, no foul. Just as a practical matter, he had every chance he should have to contest removability. But even beyond that, it seems to me that this is pretty clearly covered by our Cortez precedent, which rejected the argument that notice to appear lacking time and place, particularly when it's not fatal to an immigration judge's jurisdiction or adjudicative authority. So the question I have is, how do we rule in your favor without just flatly contradicting our earlier Cortez precedent? Your Honor, the Cortez precedent, I believe, turned on an analysis of the regulations in jurisdiction. We are not challenging jurisdiction. Well, I don't think it turned on the regulation. It relied on the regulation for the docketing. In other words, the notion, the court concluded that the notice to appear was a procedural rule, not a jurisdictional rule. In other words, the action was commenced under the regulation. That's what the holding Cortez was, and that the notice to appear was not functionally part of that process. Thank you, Your Honor, for the question. If we look at Nishevez, they did an analysis of the entire statute as a whole, looking at other sections there, and they made a decision that you cannot cure the defects. So a notice of hearing issued by the court cannot cure the defective notice to appear. This is a statutory issue where the statute has been violated. The court's decision in Cortez did not analyze the statute, I believe, and the Board of Immigration Appeals' decision in Rosales-Vargas also did not analyze the statute. It was based on the regulations. We are not challenging jurisdiction. Certainly, the immigration court has jurisdiction in these cases. They have subject matter jurisdiction. They have personal jurisdiction in these cases. Mr. Murphy, I understand there's a distinction between jurisdiction and a claim processing rule, but then I look at your brief to the BIA. So I think there is an argument you could make that survives Cortez, but when I look at your argument to the BIA, it's not clear at all to me that you made that argument. Because when I look at your brief to the BIA, I see you saying over and over again that the IJ lacked subject matter jurisdiction. Those words appear over and over again in your BIA brief. And as Judge Niemeyer points out, and as Judge Wilkinson also pointed out, that's the argument that Cortez just says is flat out wrong. So did you argue to the BIA something other than subject matter jurisdiction? And if so, where is the best place I can find that in the record? Because I think there's an argument you could make. This is a claim processing rule, not a jurisdictional rule, and you have to dismiss. But I'm not sure I see that argument in your brief to the BIA. I understand. Thank you, Your Honor. The issues that were raised in our brief to the are no longer making a jurisdiction argument based on decisions such as from the Fourth Circuit in Cortez and the BIA in Rosales-Vargas. We acknowledge that the court has jurisdiction. However, we did raise the statutory violation before the court. I see my time has expired. May I finish the answer? Yes, you may, but please be brief. Thank you. With respect to those issues and raising it before the court, MFO is a case that's almost identical to our case where the individual hearing was conducted on May 16th, 2018, and the Board of Immigration Appeals, the agency here, has recognized that you can raise these issues on briefs, as in their recognized Nisha Vez case, and they considered it appropriate. And the case was remanded, and they allowed the individual to apply for voluntary departure. We were asked about prejudice in our case, Your Honor. My client is certainly prejudiced. If we follow the Board's decision in MFO, he would have been eligible for voluntary departure at the time of his individual hearing, but for the fact that the notice to appear was dated the same day he came into the country. Conclusion, voluntary departure requires a period of one year before the notice to appear is issued in order to be eligible. MFO finds it because the statute is defective. I'm sorry, the notice to appear is a period of one year before the notice to appear is issued in order to be eligible for  to be eligible for the Nisha Vez case, and therefore, it's a time and opportunity. All right, thank you, sir. Thank you. All right, we're now prepared to hear from Mr. Ross. Good morning, Your Honor, and may it please the Court, Jonathan Ross for the United States. As the Court's mentioned today, and as the Court recognized in Cortez, under the regulations, a notice to appear is sufficient to commence proceedings, even if it does not include the time, date, or place of the hearing, and nothing in Nisha Vez changes that. Mr. Ross, can I start out by making something clear that I think is clear? Do you agree there was a statutory violation in this case? No, Your Honor. The government maintains that there was not a statutory violation for two reasons. First, 1229, even in light of Nisha Vez, 1229A, 1220, the Nisha Vez Court specifically addressed 1229A in the context of 1229D for the stop time rule, and I don't think it's a fair stretch to take that stop time analysis and to apply it to notices to appear in general, but there's two separate points that I want to make. So wait, so despite having been rebuffed twice by the Supreme Court on basically the same issue, the government has decided not to quit while you're behind and is going to keep arguing that you're allowed to do this? Your Honor, 1229A includes in the text of the statute not only that a notice to appear is sufficient, it expressly contemplates the two-step notice that we see here in subsection A. Again, the Nisha Vez Court specifically looked at the stop time rule in terms of evaluating 1229A as being sufficient to being defective in terms of stopping the accrual of time, not in terms of being defective as a notice to appear, which is really regulated by the regulation. Sir, Mr. Ross, I'm wondering whether it's wise for you to undertake an argument that conflicts directly with the statute. If we had to face the issue as opposed to the Supreme Court in the first instance, wouldn't we have to conclude that the requires the time and place at which the proceedings will be held? G, that's G. Yes, Your Honor. It says and it applies to the notice to appear. It's defining what has to appear in that document. Yes, Your Honor, but even if, and again, well, your question to you is did you violate the rule? And I would have thought you would say, yes, we did violate the rule, but it's of no moment. And that is ultimately the conclusion in this case. While the government maintains. Mr. Ross, let me suggest that I would not keep banging your head against this wall that there was nothing wrong with the notice. If I may just suggest gently to you, it would be sometimes to your advantage to concede a certain point and say, yes, we agree that the notice was defective, but it wasn't jurisdictionally fatal. And particularly, that's the case in light of Cortez. And particularly, that's the case because the later notice did comply, was compliant. And particularly because of the fact that in terms of removability, which is how prejudice should be ascertained, the proceedings are not challenged because of the fact that he did appear and he had counsel and he had credibility determination. So I just might gently suggest to you that you get off this business about the fact that the notice was compliant. Okay. Sometimes, you know, sometimes a good, good advocate will concede the weakest point in the case and go back to the stronger points in the case. Okay. Certainly. And thank you, Your Honor. I'm a fan of quitting while I'm at it. And to your point and to the point from Judge Nehemiah as well, ultimately, and I think that this is really the conclusion that the overwhelming weight of authority from sister circuits has also reached is at the end of the day, specifically in a situation like Mr. Morales, it doesn't matter. Because as the court has already addressed, this is a case about a through a notice to appear. And on January 13th, he received a notice of hearing and he appeared as scheduled to every hearing thereafter. He's fully litigated this case. And my colleague today, not only does he invoke things like voluntary departure for the very first time, that's not even included in any of the briefing in this case, but he can cite to no decision from any circuit that grants relief to a non-citizen in circumstances similar to his. Therefore, the government asks that this court follow its precedent, follow Cortez and the example set by sister circuits in denying the petition for review. Mr. Ross, I'm not sure that's entirely fair on voluntary departure because I'm looking at page 23 of the blue brief. And it says reliance on notice of hearing to cure the defective NTA would prevent petitioner from seeking post-conclusion voluntary departure. So I don't think it's fair to say it's not in the brief at all. I stand corrected, your honor. At the very least, it was not brought to the agency's attention, which would be even a more dispositive basis by which to exclude that from the court's consideration. But at any rate- So Mr. Ross, do you think it's fair to say that the court could, I'm thinking about the niche shop as situation, like there are situations where it actually matters. So there's two reasons why the date you get the notice to appear could matter. One is the due process, like did you know about your hearing? And I take your point, the government's on very strong grounds there. But the other reason is the NTA is the thing that stops the physical presence requirement for things like voluntary departure. And so it could actually matter the date on which your immigration proceedings started for purposes of whether you're eligible for voluntary departure. But it's my understanding that that kind of argument was never made here, and we wouldn't have to decide that in order to decide that case. Is that your understanding as well? That's correct, Your Honor. And there's a number of issues that have come and gone from my colleague's side in terms of what he argued and when he argued it. But again, this would not be the ideal vehicle for the court to make a decision like that. And again, following the precedent from sister circuits, they have also taken a very clear stance on what is the petitioner before them and whether the case presents the right facts for them to, for the court to evaluate certain aspects of the case. And I think the third circuit most recently does that very detailedly in its Chavez decision, which cites heavily to Cortez. In that case, not only did the, it also involves the same, my colleague was also the arguing attorney for petitioner in that case. It's of note that ultimately what the third circuit did was evaluating the case under a claims processing rule. They, again, they found no prejudice. This is a case that very closely parallels that. I also want to bring to the court's attention something that Judge Wilkinson touched on earlier in that in Mr. Morales's initial motion to terminate before the board, as he said, he, he argued statutory violation and jurisdiction. And today he says that he withdraws that, that jurisdictional argument because it is indeed foreclosed by Cortez. However, claims processing is not the same thing as a statutory violation. And I don't believe that the government's position is that he wouldn't be able to argue a claims processing defect as he hasn't preserved that claims processing defect as the argument. Recently, the 11th circuit noted that, that claims processing and a mere statutory violation are two separate issues. And again, the government's position is that that's not adequately before the court. He hasn't raised that in his prior filing. What's the difference? How do you make the difference? What's the difference between a claim processing rule and statutory violation when the statute is a claim processing rule? Well, it goes to the, it goes to the fact of the regulations and the statutes work hand in hand, that, that jurisdiction in essence, that the courts, the immigration courts, the judicatory power. Well, I understand the jurisdiction argument, but you said that a claim processing argument and a statutory argument are two different things. And I don't understand why, if the statute is a claim processing rule. They, they are two distinct issues though. And so in essence, he's saying that- In what respect? That's what I'm puzzled by. Yes, your honor. In terms of just the structure of the argument, in terms of lodging something, you know, using, using the word claims, claims processing rule. He never makes that argument. He says that there's this statutory violation. What's the difference? If the statute or if the statute at issue is a claim processing rule, what, what's the difference? If he claims the statute was violated and the statute has, happens to be a procedural rule, hasn't he made the point? I, I understand, I understand where, where your honor is coming from. And, and, and if I can, if I can just, let me explain it maybe in a slightly different light. The, the objection to a violation of a claims processing rule is something that, that can be waived and forfeited. And that's something that Mr. Morales failed to do here because he only challenged, because of the way that he, in, in his brief to the board, the way that he, he challenged it. However, he, if I can just, if I can just also direct the court's attention to the, the fact that, that this is a case that really does closely parallel what the Third Circuit recently decided in the Chavez case. And I think that that will be illustrative in, in reaching a decision here where you have a petitioner that was served notice, didn't receive a subsequent hearing notice, and fully litigated their case. He just never showed prejudice in that he attended all of his hearings and he, he didn't show how notice in a single document really would have changed the outcome. All right. Thank you. If either of my colleagues has further questions, I will defer. Otherwise, we will hear from Mr. Murphy and who has two minutes of rebuttal. Very good. If I, if I can just conclude hearing no other questions. Again, the, the court should rely. We, we understand your argument, Mr. Ross. Thank you very much. Thank you, Your Honor. Mr. Murphy? Thank you, Your Honor. I understand I have two minutes for rebuttal. Although the clock is still running, separate from that. May I begin? Yes, please. Thank you. Your Honor, Mr. Ross has suggested that there's no other circuit courts that have decision focusing on the, the issue here, the violation of the statute. They found there that the violation of the statute required the case to be terminated. They focused on the decision in E. Chavez and found out that, and found that the analysis there is relevant because it was conducted outside the narrow confines of the stop time rule. In addition, the seventh circuit court it seems to me that you have to tailor the sanction to the violation. And if the stop time rule was violated, it's obviously if you fall outside of that, then that has a different consequence. But the argument here was basically there was a, you made a statutory violation of not giving you the notice of hearing. And with the suggestion that that was a statutory violation but there was no prejudice alleged, and it's hard to see the prejudice. You argue that the prejudice, I'm talking about what the prejudice you argued before either the IJ or the BIA. And you, your main argument was that it's jurisdictional and therefore had to be terminated. But if we conclude it's not jurisdictional, then we have to turn, impose some kind of sanction as appropriate as in any procedural rule. Some procedural rules have a lot of consequence and some procedural rules have, breaches have no consequence. And so it seems to me to terminate this proceeding in this context would be fairly extraordinary, wouldn't it? I do not believe so, Your Honor. If we look to the Seventh Circuit Court of Appeals in De La Rosa, again, a recent decision came out in the middle of last year in 2021. They found that it's a mandatory claims processing rule that if you timely raise the defect, that you do not need to show prejudice. We believe in our circumstance here that as we raise the statutory violation, the notice to appear not having the time and place on it. With the Board of Immigration Appeals, that was a timely objection. The regulations at issue, Section 1240.1 of HCFR says the case is not final if the case is on appeal until a final decision is rendered. We'll also point to HCFR Sections 1003.37, 38, and 39, read in conjunction with... Where does all this leave the intent of Congress, which is, you know, in one sense is expressed in the statute, but in another sense, Congress is chiefly concerned with, is somebody removable or are they not? And to never get to that question and sort of overlook the whole matter of prejudice, I don't think that's something that the Supreme Court's likely to be very sympathetic toward. Your Honor, the intent of Congress is clear in the language of the statute. I understand that argument, but the intent of Congress is also that people who deserve to be removed should be removed and that we should get to the merits of whether they are eligible for removal or whether they are not. And to completely short circuit that, it seems to me, renders us at risk of violating what Congress was really after. But at any rate, I think your two very much. And I'll ask the courtroom deputy to... We'll recess court for just a five-minute break. Thank you, Your Honors. Thank you, Your Honors. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Toby J. Heytens